**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| The Valspar Corporation and Valspar Sourcing, Inc., <br><br> Plaintiffs, <br><br> v. <br><br> PPG Industries, Inc., <br><br> Defendant. | Case No. 16-cv-1429 (SRN/SER) <br><br><br> **MEMORANDUM OPINION AND ORDER** |

Garret A. Leach, Adam M. Kaufmann, Elizabeth A. Cutri, Kirkland & Ellis LLP, 300 North LaSalle Street, Chicago, Illinois 60654, Patrick S. Williams, Briggs & Morgan, PA, 80 South Eighth Street, Suite 2200, Minneapolis, Minnesota 55402, F. Andrew Ubel, III, The Valspar Corporation, 1101 South Third Street, Minneapolis, Minnesota 55415, and Andrew A. DeMaster, Valspar Sourcing, Inc., P.O. Box 1461, Minneapolis, Minnesota 55440, for Plaintiffs.

Celine J. Crowson, Joseph J. Raffetto, Hogan Lovells US LLP, 555 Thirteenth Street Northwest, Washington, District of Columbia 20004, Lewis A. Remele, Jr., and Jeffrey D. Klobucar, Bassford Remele, PA, 33 South Sixth Street, Suite 3800, Minneapolis, Minnesota, 55402, for Defendant.

SUSAN RICHARD NELSON, United States District Judge

**I.     INTRODUCTION**

Plaintiffs The Valspar Corporation and Valspar Sourcing, Inc. (collectively, "Valspar"), brought this suit against PPG Industries, Inc. ("PPG"), alleging that PPG has infringed four of Valspar's patents. PPG now moves the Court to transfer this case to the United States District Court for the Western District of Pennsylvania, pursuant to its discretionary authority under 28 U.S.C. § 1404(a). For the reasons set forth below,

Defendant's Motion [Doc. No. 33] is denied.

## II.     BACKGROUND

### A.     The Parties

Valspar Corporation is a Delaware corporation with its principal place of business in Minneapolis, Minnesota.  (Am. Compl. [Doc. No. 32] ¶ 1.)  Valspar Sourcing, Inc. is a Minnesota corporation also having its principal place of business in Minneapolis.  (*Id.* ¶ 2.)  As relevant to the present litigation, Plaintiffs are, respectively, the exclusive licensee and owner of several patents relating to spray-applied bisphenol A ("BPA")-free coatings used on food and beverage cans.  (Pls.' Mem. in Opp. to Def.'s Mot. to Transfer [Doc. No. 41] ("Pls.' Mem. in Opp.") at 3.)  In addition to its offices in Minnesota, Valspar maintains substantial operations within the Western District of Pennsylvania, including a "regional headquarters," a manufacturing facility, and a laboratory.  (Leggett Decl. [Doc. No. 36], Ex. 1.)

PPG is a Pennsylvania corporation with its principal place of business in Pittsburgh, Pennsylvania.  (Answer [Doc. No. 40] ¶ 3.)  As relevant to the present litigation, PPG "makes, sells, offers for sale, and/or uses coating compositions for food and beverage cans."  (*Id.*).  Like Valspar, products containing its coatings are sold nationwide.  (Karalis Decl. ¶ 20.)

### B.     The Underlying Dispute

In its Amended Complaint, Valspar alleges that PPG's INNOVEL HPS ("INNOVEL") product infringes on four patents held by Valspar (collectively, the "Asserted Patents") that relate to the production of BPA-free can coatings.  (*See* Am.

Compl. ¶¶ 24, 51, 78, 105.) PPG describes INNOVEL as a "waterborne, polymeric spray lacquer that, among other things, can be used to coat the interior of beverage cans." (Def.'s Mem. in Supp. of Mot. to Transfer Venue [Doc. No. 35] ("Def.'s Mem. in Supp.") at 3.) Like Valspar's competing valPure product, it is BPA-free. (*See* Karalis Decl. [Doc. No. 43] ¶ 7.; Am. Compl., Ex. F.) As the parties acknowledge, the ability to coat cans with BPA-free substances has become particularly important in light of the recent addition of BPA to the list of chemicals "known to the state of California" to cause cancer or reproductive toxicity. (*See* Karalis Decl. ¶ 8.) This designation requires the placement of warning labels on products containing BPA after May 11, 2016. (*Id.*) After becoming aware that PPG was selling its INNOVEL coating in the United States, Valspar brought this action on May 23, 2016.[1] (*See generally* Compl. [Doc. No. 1].)

    C.    **PPG's Motion to Transfer**

PPG brought the present motion to transfer venue to the Western District of Pennsylvania on September 9, 2016. (*See generally* Motion to Transfer Venue.) While acknowledging that venue in this District is proper pursuant to statute, and that Valspar's status as a Minnesota domiciliary raises a presumption in favor of its choice of forum, PPG contends that the unique facts of this case weigh in favor of transfer to Pennsylvania for the convenience of the parties and in the interests of justice. (*See id*; Answer ¶¶ 6, 15.) In support of this contention, PPG argues that "[t]his case will focus on (1) the technical details of the accused product [INNOVEL]; (2) the technical details of the

---

[1] Valspar later sought and received leave to file an amended complaint, which added a claim for infringement of the fourth patent involved in this dispute. (*See generally* Am. Compl.)

coating compositions claimed in the asserted patents; and (3) the technical details of the prior art coating compositions that PPG developed in the mid-1990s that render the asserted patents invalid." (Def.'s Reply Mem. in Supp. of Mot. to Transfer [Doc. No. 47] ("Def.'s Reply Mem. in Supp.") at 1.) According to PPG, the relevant facts, witnesses, and documents associated with each of these three case elements are "overwhelming[ly]" located in the Western District of Pennsylvania. (Id. at 1, 3) Specifically, it notes that "[t]he alleged development of Valspar's claimed coating compositions occurred in Valspar's packaging coating laboratory in Pittsburgh, Pennsylvania. Four of the five inventors named on the asserted patents reside in the Western District of Pennsylvania, and . . . INNOVEL[, along with the prior art coatings,] was designed and developed by PPG scientists in . . . the Pittsburgh area." (Id. at 1-2.) PPG further identifies ten third-party witnesses "that either reside in the Western District of Pennsylvania or for whom the Western District of Pennsylvania is a more convenient forum," who it argues will be "essential" to the case. (Id. at 13.) In contrast to this cornucopia of contacts with Pennsylvania, PPG contends that the only truly relevant connection to Minnesota that Valspar can point to is that its headquarters are located there. (Def.'s Mem. in Supp. at 2.)

In response, Valspar highlights not only its status as a Minnesota domiciliary, but also what it claims are several flaws in PPG's analysis of the relevant contacts. Among other arguments discussed at greater length below, Valspar contends that PPG errs in: (1) assuming that the "operative facts" of this patent infringement case center on Pennsylvania; (2) that its identified third-party witnesses located in Pennsylvania are

4

actually essential and non-cumulative; and (3) that no relevant third-party witnesses are located either in Minnesota or in a location closer to Minnesota than Pennsylvania. (*See* Pls.' Mem. in Opp. at 7-9, 19-20, 21.) On the whole, Valspar notes that the party seeking transfer under 28 U.S.C. § 1404(a) bears a "heavy burden" of demonstrating that the facts weigh strongly in favor of its desired forum, and it contends PPG simply cannot meet this burden. (*See id.* at 5 (quoting *BAE Sys. Land & Armaments L.P. v. Ibis Tek, LLC*, 124 F. Supp. 3d 878, 884 (D. Minn. 2015).)

## III. DISCUSSION

### A. Standard of Review

28 U.S.C. § 1404(a) provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ." The burden lies on the party seeking to transfer venue to establish that transfer is in fact warranted. *Terra Int'l, Inc. v. Miss. Chem. Corp.*, 119 F.3d 688, 695 (8th Cir. 1997). "That burden may not be met simply by showing that the factors are evenly balanced or weigh only slightly in favor of transfer." *Datalink Corp. v. Perkins Eastman Architects, P.C.*, 33 F. Supp. 3d 1068, 1077 (D. Minn. 2014) (quotation and citations omitted). Rather, the balance of factors must "strongly" favor the movant. *Gulf Oil Corp. v. Gilbert*, 3330 U.S. 501, 508 (1947). In considering whether a transfer under section 1404(a) is appropriate, the court must consider the convenience of the parties, the convenience of the witnesses, the interests of justice, "and any other relevant factors when comparing alternative venues." *Terra Int'l*, 119 F.3d at 696. As a general matter, the court acts on the presumption that the plaintiff's choice of

forum is the appropriate one, "especially where the plaintiff resides in the district in which the lawsuit was filed." *Datalink*, 33 F. Supp. 3d at 1077 (citing *Travel Tags, Inc. v. Performance Printing Corp.*, 636 F. Supp. 2d 833, 836 (D. Minn. 2007); *see also Terra Int'l*, 119 F.3d at 695 (noting that "federal courts give considerable deference to a plaintiff's choice of forum"). There is no "precise mathematical formula to be employed" in deciding a motion to transfer, however, and the court must make its determination based on a "case-by-case evaluation of the particular circumstances at hand and a consideration of all relevant factors." *Terra Int'l*, 119 F.3d at 691; *Cosmetic Warriors Ltd. v. Abrahamson*, 723 F. Supp. 2d 1102, 1105 (D. Minn. 2010).

### B. Analysis

The threshold requirement of transfer pursuant to section 1404(a) is that the instant action be one that could have been brought in the movant's desired forum. 28 U.S.C. 1404(a); *Michael Foods, Inc. v. Nat'l Pasteurized Eggs, Inc.*, No. 11-cv-941 (SRN/FLN), 2011 WL 3154950, at *1 (D. Minn. July 26, 2011). Here, there is no apparent dispute that this action could have been brought in the Western District of Pennsylvania. In the context of a patent infringement claim, one setting in which venue is proper is "in the judicial district where defendant resides . . . ." 28 U.S.C. § 1400(b). A corporate defendant "resides" wherever it is subject to personal jurisdiction at the time a suit is commenced. 28 U.S.C. § 1391(c). By any measure, PPG is subject to personal jurisdiction in the Western District of Pennsylvania.

Having passed this hurdle, the Court will consider individually those factors affecting (1) the convenience of the parties; (2) the convenience of the witnesses; and (3)

the interests of justice in the present matter. *Terra Int'l*, 119 F.3d at 696.

### 1.     The Convenience of the Parties

In considering the convenience of the parties, this Court has typically considered such factors as the plaintiff's choice of forum, the location of party witnesses, the costs associated with travel into the forum (including from lost productivity), accessibility of relevant documents, and the locus of the operative facts. *See Dial Tech., LLC v. Bright House Network, LLC*, No. 13-cv-2995 (MJD/TNL), 2014 WL 4163124, at *9-10 (D. Minn. Aug. 21, 2014); *Datalink*, 33 F. Supp. 3d at 1077-78; *Michael Foods*, 2011 WL 3154950, at *2; *Oien v. Thompson*, 824 F. Supp. 2d 898, 903 (D. Minn. 2010). To prevail on this element, it is not enough to show merely that transfer will shift the weight of inconvenience from the defendant to the plaintiff. *Datalink*, 33 F. Supp. 3d at 1078 ("Transfer of venue does not exist simply to shift the inconvenience from the defendant to the plaintiff.") (citation omitted). The movant must show some significant advantage to litigating in its chosen forum. *Cosmetic Warriors*, 723 F. Supp. 2d at 1106.

Here, somewhat unusually, PPG argues that the Western District of Pennsylvania is a more convenient forum both for itself *and* for Valspar. In support, it notes that both of the parties' packaging coating businesses are largely or wholly located in that district, and that both INNOVEL and the prior art coatings at issue in this case were developed by PPG employees at PPG's laboratories in the Pittsburgh area. (Def.'s Mem. in Supp. at 7-8, 11.) In its briefing, PPG claims to have identified eighteen party witnesses who are relevant both to the infringement claim and its own invalidity defense, and who would be forced to travel to Minnesota for trial. (*Id.* at 14.) It further notes that the research and

development underlying Valspar's Asserted Patents likely took place at its facilities in Western Pennsylvania, and that several relevant Valspar witnesses are also present in that district. (*Id.* at 15-16.) Taken together, it argues these facts clearly support transfer.

Unsurprisingly, Valspar takes issue with a number of PPG's contentions. Foremost among its objections is to the number of party witnesses that PPG contends it would be forced to bring to Minnesota. (Pls.' Mem. in Opp. at 12.) As Valspar points out, several of PPG's "foreseeable potential witnesses" have cumulative knowledge, making it unlikely that each would actually be presented at trial. Further, to the extent depositions of those witnesses will be necessary, Valspar assures the Court that it will take those depositions in Pennsylvania. (*Id.* at 14-15.) Thus, it argues that the actual number of party witnesses that PPG will be forced to bring to the forum is substantially less than represented. Relatedly, Valspar contends that PPG is premature in discussing what witnesses will be relevant to its invalidity defense, or where the operative facts occurred, as Valspar has yet to even serve its infringement contentions. (*Id.* at 13-14.)

Although the Court acknowledges that this factor is a close one, for several reasons it concludes that PPG has not carried its heavy burden of demonstrating that the convenience to the parties of transfer to Western Pennsylvania outweighs the strong presumption in favor of a resident plaintiff's choice of forum.[2] *See Datalink*, 33 F. Supp.

---

[2] PPG argues that lesser weight should be given to Valspar's choice of its home forum because it is in the process of being acquired by an Ohio-based company—meaning that Minnesota may not be its home forum by the time this case concludes. (Def.'s Reply Mem. in Supp. at 4-5.) While the Court acknowledges this unusual twist in the analysis, it concludes that no change need be given to the weight given to Valspar's choice of Minnesota as the forum for at least two reasons: first, as Valspar acknowledged at the

3d at 1079. First, PPG's arguments are heavily reliant on the large number of employees it says would be required as witnesses in this case. But it is well established that concerns for the convenience of party witnesses are of subsidiary importance in the overall analysis "because it can be assumed that witnesses within the control of the parties will appear voluntarily in a foreign forum." *Toro Co. v. Hunter Indus. Inc.*, No. 14-cv-4463 (MJD/FLN) 2015 WL 4545403, at *3 (D. Minn. July 27, 2015) (citation omitted). This is particularly true where the defendant is a large corporation quite capable of supporting the costs of witness travel. *See Toomey v. Dahl*, 63 F. Supp. 3d 982, 993 (D. Minn. 2014). Courts have further recognized—repeatedly—that merely cataloguing a list of potentially relevant witnesses is not determinative of party convenience, especially when much of their proposed testimony appears cumulative. *See Terra Int'l*, 119 F.3d at 696 (noting that "sheer numbers of witnesses will not decide which way the convenience factor tips"); *Newman v. Stryker Sales Corp.*, No. 09-cv-2866 (JRT/JKK), 2010 WL 3926200, at *4 (D. Minn. Sept. 30, 2010). Indeed, in this matter the fact that so many party witnesses are apparently available to testify on the same subjects may very well militate *against* a finding of inconvenience, because it leaves PPG free to choose its witnesses in ways that minimize workload disruption. Additionally, where the plaintiff has agreed—as is the case here—that witnesses in excess of those actually needed at trial need never leave the defendant's desired forum, the burden to the

---

hearing, there is no guarantee that the sale will close before this case is decided—if indeed it closes at all. Second, it appears likely that even if the transaction is completed, a significant corporate presence will remain in this forum for several years. Together, these considerations counsel against reducing the traditional weight afforded to a company's choice of its home forum merely on the basis of uncertain future events.

9

remaining few is of limited consequence in the transfer balance.

Second, this Court has previously acknowledged that determinations related to the locus of operative facts may be tricky in the early stages of litigation, when the necessary record upon which to make such a finding is still coalescing. *See Datalink*, 33 F. Supp. 3d at 1078. While this dictum may be more relevant in some cases than in others, Valspar is correct to caution against too much reliance on assertions of operative facts where the plaintiff has not yet even served its infringement contentions. In any case, it is apparent that there is substantial disagreement between the parties as to the location of certain key events, as well as which facts will be of importance going forward. (*See, e.g.*, Def.'s Mem. in Supp. at 8 n.7; Pls.' Mem. in Opp. at 8-9, 16-17; Def.'s Reply Mem. in Supp. at 16-17.) In light of this uncertainty, the Court cannot place great weight on this factor.

Finally, the Court notes that while courts traditionally consider the location of documents and other relevant physical evidence when weighing the convenience of the parties, this factor is of little real importance in an age of easy, electronic file transfer and case filing. *See Luckey v. Alside, Inc.*, No. 15-cv-2512 (JRT/JSM), 2016 WL 1559569, at *5 (D. Minn. Apr. 18, 2016); *Finn v. Moyes*, No. 14-cv-1293 (MJD/TNL), 2015 WL 505750, at *10 (D. Minn. Feb. 6, 2015). Here, it does not impact the Court's conclusion that PPG's arguments regarding the convenience of the parties do not outweigh the strong preference for Valspar's chosen forum.

  **2.**  **The Convenience of the Witnesses**

Of greater importance than the convenience to the parties, in the scales of the transfer analysis, is the convenience of non-party witnesses. *See, e.g.*, *Klatte v. Buckman,*

*Buckman & Reid, Inc.*, 995 F. Supp. 2d 951, 955 (D. Minn. 2014) (declaring this factor to be "the most important in the inquiry"); *Austin v. Nestle USA, Inc.*, 677 F. Supp. 2d 1134, 1138 (D. Minn. 2009) (same).  The basic reason for this preference is simple—while "it can be assumed that witnesses within the control of the parties will appear voluntarily in a foreign forum," *Toro*, 2015 WL 4545403, at *3, the court is not warranted in making the same assumption regarding non-party witnesses.  Because of the additional potency of this factor, however, the burden lies squarely on the moving party to establish (1) that any proffered non-party witness is actually essential to the case, and (2) that his or her testimony will not merely be cumulative of a more readily accessible witness.  *See, e.g.*, *BAE Sys.*, 124 F. Supp. 3d at 887; *Travel Tags*, 690 F. Supp. 2d at 792.  As with party witnesses, the court's determination is not dependent on which side presents a longer list of potential third-party witnesses.  *Travel Tags*, 690 F. Supp. 2d at 793 (citing *Terra Int'l*, 119 F.3d at 696).

In its briefing on this issue, PPG identifies a number of former employees, many (but not all) of whom reside in the Western District of Pennsylvania, that it claims have knowledge relevant to the present dispute, and may need to be called as witnesses before this Court.  (*See* Def.'s Mem. in Supp. at 16-19; Valukas Decl. [Doc. No. 37] ¶¶ 9-10.)  It also points to two named inventors of the Asserted Patents—who reside in or near Western Pennsylvania and are no longer employed by Valspar—as potentially relevant witnesses.  (Def.'s Mem. in Supp. at 19-20.)  Taken together, PPG asserts that this collection of potential third-party witnesses militates in favor of finding that the convenience of witnesses factor tips to its side.

Valspar persuasively counters PPG's assertions on several fronts, however.  First, it points out that—based on PPG's own summaries of proposed testimony—few or possibly none of the former PPG employees identified actually possesses knowledge that is unique and non-cumulative of knowledge possessed by other, party witnesses.  (*See* Pls.' Mem. in Opp. at 19-20.)  Whether Valspar is correct in this assertion may ultimately prove debatable, but for purposes of this Motion PPG has not presented sufficient evidence to demonstrate otherwise—and it is its burden to do so.  *See Toomey*, 63 F. Supp. 3d at 993; *Nelson v. Master Lease Corp.*, 759 F. Supp. 1397, 1402 (D. Minn. 1991).  Second, with regard to the two former Valspar employees who are named as inventors on the Asserted Patents, Valspar accurately notes that three *other* named inventors on those patents still work at its laboratories, including the lead inventor, making the former employees' testimony likely cumulative of available witnesses.  (*See* Pls.' Mem. in Opp. at 20-21.)  Finally, Valspar asserts that its theory of infringement may require calling can manufacturers as witnesses, and it contends that these manufacturers are generally located closer to Minnesota than Pennsylvania, making this district more convenient for them.  (*Id.* at 21.)  For reasons discussed above, the Court places only little weight on this assertion in light of its inherently speculative nature, but it nonetheless adds to the conclusion that PPG has not carried its burden of showing that Western Pennsylvania is a more convenient forum for essential, non-cumulative third-party witnesses.

> 3. **The Interests of Justice**

The final factor considered in the section 1404(a) analysis—that of the "interests

CASE 0:16-cv-01429-SRN-SER   Document 52   Filed 11/03/16   Page 13 of 15

of justice"—does not alter this Court's conviction that transfer is unwarranted here. In considering this factor, courts traditionally look to such elements as judicial economy, the plaintiff's choice of forum, the comparative costs to the parties of litigating in each forum, obstacles to a fair trial, conflict of law issues, and the advantages of having a local court determine questions of local law. *Terra Int'l*, 119 F.3d at 696. Many of these concerns are not relevant here, but courts have consistently emphasized the great weight to be afforded to the plaintiff's choice of forum—particularly when it resides there. *See, e.g.*, *Datalink*, 33 F. Supp. 3d at 1078 ("[Plaintiff's] choice of a Minnesota forum is an important consideration, particularly given that it is a Minnesota company.") (quotation and citation omitted); *Travel Tags*, 690 F. Supp. 2d at 795; *Advanced Logistics Consulting, Inc. v. C. Enyeart LLC*, No. 09-cv-720 (RHK/JJG), 2009 WL 1684428, at *6 (D. Minn. June 16, 2009).

Although PPG points to several considerations that it argues should outweigh Valspar's choice of its home forum, they do not suffice to tip the scales in its favor. As an initial matter, the Court finds inapposite those cases cited by PPG in support of its contention that, because the locus of operative facts is outside this district,[3] Valspar's choice of forum should be afforded only minimal weight. *See In re Acer Am. Corp.*, 626 F.3d 1252, 1254-55 (Fed. Cir. 2010); *In re Apple, Inc.*, 602 F.3d 909, 913 (8th Cir. 2010); *Terra Int'l*, 119 F.3d at 695; *Brandt Indus. Ltd. v. Harvest Int'l Corp.*, No. 14-cv-4716 (DWF/JSM), 2015 WL 3645863, at *3 (D. Minn. June 10, 2015); *Michael Foods*, 2011

---

[3] Whether the locus of operative facts is actually Western Pennsylvania is disputed, of course. *See supra* at 9-10.

13

WL 3154950, at *3; *GMAC/Residential Funding Corp. v. Platinum Co. of Real Estate and Fin. Servs., Inc.*, No. 02-cv-1224 (RHK/AJB), 2003 WL 1572007, at *2 (D. Minn. Mar. 13, 2003). Each of the cases cited by PPG contains some significant factor not present here—such as that the plaintiff was domiciled outside the forum, or a forum selection clause existed, or that similar pending cases existed in the transferee forum—which greatly affected the deciding court's analysis. In the absence of similar facts, this Court sees no reason to disturb the well-settled weight afforded to the plaintiff's chosen forum.

The Court is likewise unpersuaded that considerations of judicial economy favor transfer. In support of this argument, PPG contends that the average time to trial for patent cases brought in the Western District of Pennsylvania—at thirty-one months—is "roughly a year and a half faster" than in Minnesota. (Def.'s Mem. in Supp. at 26; Leggett Decl. ¶ 21.) But these statistics, besides being "speculative", *In re Apple*, 602 F.3d at 915, are also irrelevant in light of this Court's Pretrial Scheduling Order [Doc No. 30], which sets a trial-ready date of March 15, 2018—less than twenty-two months after filing of the original Complaint, and several months faster than PPG's own evidence suggests would be likely in Western Pennsylvania. More pertinently, this case has already passed several milestones (such as a technology tutorial attended by Magistrate Judge Rau) that would have to be repeated if it were transferred, making it even less likely that transfer would serve to speed justice. Judicial economy does not favor transfer here, and absent other compelling arguments, the Court concludes that the interests of justice weigh in favor of maintaining this matter in Minnesota.

## IV. CONCLUSION

For all of the above reasons, the Court concludes that PPG has failed to satisfy its heavy burden of demonstrating that the Western District of Pennsylvania is a more convenient forum for this case than the District of Minnesota. *Datalink*, 33 F. Supp. 3d at 1079.

**THEREFORE, IT IS HEREBY ORDERED THAT:**

1. Defendant's Motion to Transfer Venue [Doc. No. 33] is **DENIED**.

Dated: November 3, 2016                               s/Susan Richard Nelson
                                                     SUSAN RICHARD NELSON
                                                     United States District Judge